ORIGINAL

FILED
JUL 2 2007
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

GEORGE K. BAL, M.D.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 07-491 C

**COMPLAINT**

This military pay case arises out of Incentive Contracts for military doctors. Given this context, this dispute is governed by both contract and money-mandating statute and regulations. In short, Dr. George K. Bal ("Plaintiff"), asserts that he has completed all of his applicable Active Duty Service Obligation ("ADSO") and should be relieved of any further monetary responsibility. Plaintiff also asserts he is entitled to attorneys' fees under the Equal Access to Justice Act. In furtherance of these assertions, Plaintiff, through his undersigned counsel, hereby files this complaint against Defendant, alleging as follows:

## I. PARTIES, JURISDICTION & VENUE

### A. The Parties

1. Plaintiff Dr. George K. Bal is a licensed Physician specializing in Orthopedic medicine. Plaintiff's place of residence is 2 Miramachi Trail, Morgantown, West Virginia 26508.

2. Plaintiff has served in the Army for over twenty (20) years, fourteen (14) of which were active, including two tours of duty in a combat zone.

3. Defendant is the United States of America, acting by and through the Office of the Surgeon General ("OTSG") and the Defense Finance and Accounting Service ("DFAS").

**B. Jurisdiction & Venue**

4. This Complaint is being lodged by Plaintiff against Defendant in connection with its decision to improperly calculate Plaintiff's ADSO and the amount of debt allegedly owed by Plaintiff.

5. This Court has jurisdiction to consider and decide this Complaint and grant the relief requested pursuant to the Tucker Act, 28 U.S.C. § 1491, the money-mandating statute, 37 U.S.C. § 204 and the money-mandating regulations Department of Defense ("DoD") Directive 6000.13, Section 6.6.3.1. and AR 351-3, 10-3.

6. Venue is proper in this Court under and by virtue of 28 U.S.C. § 1391(a).

## II. OPERATIVE FACTS

7. Plaintiff has served in the Army for over twenty (20) years, fourteen (14) of which were active. Plaintiff's active duty service obligation for education and training or accession bonus was initially scheduled to expire on May 19, 2003.

8. On September 30, 2002, Plaintiff entered into a Critical Skills Retention Bonus ("CSRB") Agreement for $30,000. This Agreement extended Plaintiff's obligation for remaining on active duty one year beyond his original training obligation date.

9. In return for signing the CSRB, Defendant promised Plaintiff an Army-sponsored Shoulder and Elbow Fellowship at Duke University. However, Plaintiff did not begin the fellowship under the CSRB because he was deployed to Iraq for Operation Iraqi Freedom ("OIF1") with the 82nd Airborne Division from February 2003 through May 2003. Upon his

return from OIF1, Plaintiff was again promised the Fellowship and asked to sign a Multi-Year Special Pay contract ("MSP").

10. By signing the MSP in June of 2003, Plaintiff agreed to a two-year extension of his ADSO from its effective date of July 1, 2003 to June 30, 2005. Prior to executing this agreement, Tony Jones, the local specialty pay coordinator and OTSG informed Plaintiff that his ADSO under the MSP would run concurrently with his CSRB obligation. Therefore, Plaintiff was of the understanding that his ADSO would expire on June 30, 2005. But for this expiration date as well as the Fellowship, Plaintiff would not have entered the MSP. Additionally, in July of 2003, the OTSG drafted a memorandum confirming Plaintiff's total obligation under the MSP to be two years, from July 2003 to June 2005.

11. Plaintiff was then deployed to Iraq for OFII with the 82nd Airborne Division again from August 2003 through August 2004. Therefore, Plaintiff was unable to begin the Fellowship until he returned in August of 2004. However, despite the support of Plaintiff's chain of command, Plaintiff's participation in the Fellowship was deemed invalid in September of 2004 and Plaintiff was no longer allowed to participate.

12. In January of 2005, the OTSG drafted a memorandum in an attempt to "correct" the one sent in July of 2003. The "corrected" memo stated that Plaintiff's total obligation under the MSP was not only 2 years, but 2 years, 10 months, and 19 days (running from July 1, 2003 to May 19, 2006). In February of 2005, the OTSG also informed Plaintiff that his ADSO did not expire in June 2005 but rather in May of 2006.

13. The only non-concurrence from Plaintiff's chain of command sent to the OTSG regarding Plaintiff's participation in the Fellowship came from COL Ronald Maul. COL Maul also commented on the expiration date of Plaintiff's ADSO citing DoD Directive 6000.13,

Section 6.6.3.2. In contrast to COL Maul's comments, this section governs only ADSO's served in civilian facilities.

14. Although Plaintiff was originally ordered to serve his ADSO in a civilian facility (the Duke University), he actually served it in a military facility due to his tours of duty in Iraq. Therefore, DoD Directive 6000.13, Section 6.6.3.1, rather than Section 6.6.3.2, applies to Plaintiff's ADSO calculation.

15. Section 6.6.3.1 states with regard to ADSOs served in military facilities:

> A member shall incur an ADO of one-half year for each half-year, or portion thereof, but the minimum ADO shall be not less than two years. That ADO may be served **concurrently** with other ADOs or with obligations incurred for DoD-sponsored pre-professional (undergraduate) education or training prior to long-term health or health-related education or training [emphasis added].

This Section validates the OTSG's original interpretation of Plaintiff's ADSO under the MSP. Moreover, Section 6.6.3.2 does not mandate whether the ADSO is concurrent or consecutive but is silent on this point. Therefore, given Section 6.6.3.1. and the promises made to Plaintiff upon entering the agreements, the MSP runs concurrently with the CSRB and Plaintiff's ADSO ends in June of 2005.

16. In addition, Army Regulation 351-3, Section 10-3a(2)(a) states with regard to ADSO's served in military facilities: " A member who is already obligated for at least 2 years on entry into a program, will not incur any additional ADO." This further substantiates Plaintiff's ADO expiration date as June 30, 2005.

17. In the alternative, if it is deemed that Plaintiff served his ADO in a civilian facility, Army Regulation 351-3, Section 10-3(a)(3) states,

> A member not subsidized by the Department of Defense during training in a civilian facility (NGMEP) will incur an ADO of 2 years

> which may be served **concurrently** with any other ADO [emphasis added].

Again, this regulation provides further validation for Plaintiff's ADO to expire in June 2005 rather than May 2006.

18. Because DoD Directive 6000.13, Section 6.6.3.2 allows for the last half of an incurred obligation to be satisfied by service in the Selective Reserves for a time period equal to the remaining ADSO, Plaintiff requested a waiver of his ADSO obligation in April of 2005. As a result, the Deputy Assistant Secretary John P. McLaurin III granted the waiver of Plaintiff's remaining ADSO, effective June 30, 2005. However, the waiver was contingent upon the recoupment of money owed by Plaintiff based upon his MSP, which Plaintiff reserved the right to challenge.

19. After leaving his military service, Plaintiff began making payments for other debts he owed. However, Defendant has repeatedly failed to credit Plaintiff's efforts. Moreover, Defendant has exacerbated the problem by sending Plaintiff a series of several letters stating inaccurate amounts of Plaintiff's indebtedness. These inaccurate amounts were the result of Defendant refusing to accept the payments for the debts made by Plaintiff (in the amount of $2,738.82) as well as a miscalculation in the number of days for Plaintiff's outstanding service. An accurate count of the number of days is crucial because it is used as a multiplier to determine the amount of recoupment debt that remains outstanding.

20. Plaintiff responded to these letters, dated September 15, 2006, November 16, 2006, and March 13, 2007, providing more than sufficient evidence to prove not only has he already paid the $2,738.82 in full, but that his ADSO expired on June 30, 2005, reducing the number of days of service Plaintiff has outstanding to zero.

21. On May 16, 2007, Defendant sent a final letter to Plaintiff stating that the amount of Plaintiff's debt had been originally miscalculated and that the actual amount was even more than what was previously determined. The letter further declared that the corrected amount, $24,298.84, was based on a calculation of 101 days of credited service and 259 days of service obligation outstanding. Defendant reached this conclusion by maintaining that Plaintiff's ADSO expired on May 19, 2006 rather than June 30, 2005. Moreover, Defendant proclaimed in the letter that this conclusion was drawn because Plaintiff's CSRB is consecutive to his MSP and his obligation was extended from the ending date of the MSP. However, Defendant failed to cite any law or regulation to support this determination, which, as noted in paragraphs 14-18 above, is incorrect and contrary to the law and regulations.

22. Plaintiff has attempted to resolve this indebtedness matter with Defendant informally with several letters back and forth. However, Defendant not only refuses to accept Plaintiff's argument, but has recently increased Plaintiff's total amount owed to $24,298.84. It is clear this matter will not be resolved short of court intervention.

**III. CAUSE OF ACTION – BREACH OF CONTRACT**

23. Plaintiff incorporates paragraphs 1-22 above, as if the same were set forth fully herein.

24. As stated above, the parties entered into both the CSRB and MSP, both of which are valid agreements. Plaintiff has performed all of his obligations under both agreements. Yet, as set forth above, Defendant's actions have resulted in breaches of these agreements, *e.g.* failure to recognize the expiration date of Plaintiff's ADSO as June 30, 2005, which Defendant continuously refuses to cure. Therefore, due to Defendant's breaches of the

CSRB and the MSP, Plaintiff should be absolved of any debt or obligation allegedly owed to Defendant.

## IV. CAUSE OF ACTION – REVIEW OF AGENCY ACTION

25. Plaintiff incorporates paragraphs 1-22 above, as if the same were set forth fully herein.

26. As stated above, Defendant has issued several decisions that are incorrect regarding the expiration date of Plaintiff's ADSO and the calculation of his debt amount. Given the promises made to Plaintiff and the previous letter issued by the OTSG in July of 2003, Defendant's decisions were arbitrary and made in bad faith. In addition, Plaintiff was seriously prejudiced by the error made in calculating his ADSO. For these reasons, Plaintiff asks this Court to review the Defendant's decisions.

## V. ATTORNEYS' FEES

27. Defendant's breach of its agreements with Plaintiff has made it necessary for Plaintiff to hire undersigned counsel to prosecute this cause and agree to pay a reasonable fee for said services. Consequently, Plaintiff is entitled to recover from Defendant its reasonable attorneys' fees incurred in this action under the Equal Access to Justice Act., 28 U.S.C. § 2412(d).

## VI. PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court:

a. Reinstate and make effective the July 2003 letter from the OTSG stating Plaintiff's total years for obligation is 2 years: from July 2003 to June 2005;

b. Relieve Plaintiff of his alleged debt in the amount of $24,298.84 and hold that Plaintiff's current monetary and service obligation is zero;

c. Award attorneys' fees; and

d. Such other and further relief, be it general or special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**NEEL, HOOPER & BANES, P.C.**

BY ______________________

**Bryant S. Banes**
1700 West Loop South, Suite 1400
Houston, Texas 77027
(713) 629.1800 [TELEPHONE]
(713) 629.1812 [FACSIMILE]

COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on June 29th, 2007, a copy of the foregoing filing was sent via facsimile, to:

U.S. Department of Justice
Civil Division
National Courts Branch
Telephone: (202) 514-7300
Facsimile: (202) 514-7965

______________________
Bryant S. Banes